# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 52620

| | | |
|---|---|---|
| HMI, HAMILTON MANUFACTURING, INC. an Idaho corporation; and CHRISTY HAMILTON f/k/a CHRISTY HAMILTON EAMES, an individual, | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | Boise, February 2026 Term |
| v. | ) ) | Opinion filed: July 10, 2026 |
| CITY OF TWIN FALLS, a municipal corporation; and JON CATON, an individual, | ) ) ) | Melanie Gagnepain, Clerk |
| Defendants-Respondents, | ) ) | |
| and | ) ) | |
| JOHN/JANE DOES 1-10, | ) ) | |
| Defendants. | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Benjamin J. Cluff, District Judge.

The judgment of the district court is <u>affirmed</u>.

Benoit Law (Benoit, Mollerup, Danielson & Grieve, PLLC), Twin Falls, for Appellants HMI, Hamilton Manufacturing, Inc., and Christy Hamilton. Bren Mollerup argued.

Castleton Law, PLLC, Boise, for Respondents City of Twin Falls and Jon Caton. Bruce Castleton argued.

---

MEYER, Justice.

This appeal concerns the existence and location of two utility easements for underground water and sewer lines owned by the City of Twin Falls (the "City") on real property owned by Christy Hamilton (formerly Christy Eames).[1] Christy operates a business, Hamilton Manufacturing, Inc. (collectively, "HMI"), on three adjoining parcels in Twin Falls, Idaho. In

---

[1] Because this dispute involves family members with the same last name, we refer to Christy, Gene, and Gloria Hamilton by first name for clarity. No disrespect is intended.

2018, one of the City's water lines developed a large leak requiring excavation and repair of the water line on Christy's property near, and partially under, the HMI Manufacturing building.

HMI subsequently filed a lawsuit against the City, claiming trespass and nuisance related to the water and sewer lines that run through Christy's property. The City defended against these claims on the basis that it possesses easements, either express or prescriptive, for the water and sewer lines. After a bench trial, the district court dismissed HMI's trespass and nuisance claims. The court determined that the City held either an express easement for the sewer line or, in the alternative, a prescriptive easement. The district court further concluded that the City established a prescriptive easement for the water line.

On appeal, HMI argues that the district court erred by concluding that the City held an express easement for the sewer line because the court failed to (1) give meaning to all the language of the instrument granting the express easement, and (2) resolve the instrument's latent ambiguities. HMI also argues, among other things, that the district court failed to properly evaluate whether the City established prescriptive easements for the water line and sewer line because the subject property was wild, unenclosed, and unimproved at the time the lines were installed, and, therefore, the installation was presumptively permissive. HMI further argues that the district court failed to adequately describe the locations of the easements. For the reasons set forth below, we affirm the judgment of the district court.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Christy owns three parcels of real property in Twin Falls County adjacent to Rock Creek Canyon, which are referred to as the "West Parcel," "East Parcel," and "Canyon Parcel." One or more members of the Hamilton family have operated a business on these parcels for several decades, beginning with Gene and Gloria Hamilton (Christy's parents) in the 1970s. The business, HMI Manufacturing, is a corporation run by Christy that manufactures erosion control products. The City owns multiple water and sewer lines that run under these parcels. This appeal concerns a water line that runs underneath the West Parcel and a sewer line that runs underneath the East Parcel, depicted below in Figure 1:



**Disputed Water Line**

**Disputed Sewer Line**

*Figure 1*

1. *West Parcel and the Disputed Water Line.*

The West Parcel's relevant historical background begins in 1911, when Frank E. Beatty acquired the West Parcel. In 1918, the City installed an underground water line on the West Parcel as part of a waterworks improvement project. No evidence of any agreement exists between the City and Beatty regarding the installation of this line until 1938, when the City obtained an easement from Beatty over a portion of the West Parcel to the canyon rim. This portion of the water line is not in dispute. Instead, the dispute focuses on the portion of the water line that exits near the northeast corner of the main HMI Manufacturing building that exists today and exits the Western Parcel's northern boundary by Rock Creek Canyon.

In 1941, Beatty granted his three children one-third undivided interests in the West Parcel. A portion of what is now the HMI Manufacturing complex, including the HMI Manufacturing building, was constructed on the West Parcel in 1948. Twenty-five years later, in 1973, Gene and Gloria Hamilton acquired the West Parcel.

In 1978, Gene developed plans for expanding the HMI Manufacturing facility with an architect named David Armstrong, who produced drawings depicting an expansion of Gene's business down into Rock Creek Canyon below Gene's existing buildings on the canyon rim. These drawings indicate the presence of "Sewer & Utility Easement(s)" on the same area where the water line in question is located. One year later, in March 1979, Armstrong, acting on behalf of Gene, came before the Twin Falls City Planning and Zoning Commission and requested approval for

Armstrong's design. The Twin Falls Planning and Zoning Commission Meeting Minutes from March 27, 1979, state the following as an item of new business:

> Canyon fill for Hamilton Insulation presented by Dave Armstrong - Design Review. Motion by Petersen to approve as covered in Mr. Armstrong's letter with a statement added that the fill will not cover the City water and sewer lines.

According to the minutes, the Planning and Zoning Commission approved the design review, provided that "the fill will not cover the City water and sewer lines."

In 1981, the City vacated a portion of Market Street, which crossed the West Parcel. Gene and Gloria acquired this property through a municipal corporation deed, dated December 1, 1981, which was "subject . . . to an easement thereon for existing water and sewer lines and any other public utilities." Three years later, the water line broke below the northeast corner of the HMI Manufacturing building. The 1984 water break caused erosion of the canyon wall, exposing much of the water line near to, and down the slope of, Rock Creek Canyon.

In 1986, the City sent two letters to Gene, addressed to Gene Hamilton of Hamilton Insulation and Gene Hamilton of Hamilton Manufacturing, regarding another failure of a water line, and the City's belief that the failure was caused by Gene's placing fill into the canyon, covering the water line. The first letter, dated January 17, 1986, stated:

> For the second time in twelve months we have suffered major water main break under the canyon fill on the north of Washington Street. The main in question is in a utility easement and was not designed to be covered. We are of the opinion that the weight of the cover material is causing the line failure. Next week the line will be uncovered and repaired. The repair could cost as much as $5,000. Once the repair is complete it is our intention to remove the fill from the easement and leave the line uncovered. Your cooperation in this matter will be appreciated.

The second letter, dated January 27, 1986, stated:

> I have reviewed the records concerning the City's utility easement and your fill permit dated 1980. Plans you submitted for the fill permit clearly show the easement in question. The fill permit clearly states that there is to be no fill activity around City utility lines. The permit also states that the permit holder will be responsible for all damages to utility lines caused by fill activity. In our conversation last week you stated that you have documents granting a right to fill over the easement. Gene, prior to our meeting to discuss this issue, I would appreciate receiving copies of the documents. In the interim, your cooperation in not filling over the easement will be appreciated.

In 1999, Gene and Gloria transferred the West Parcel to HNH, L.L.C., an Idaho limited liability company owned by the Hamiltons' daughter and son-in-law, Tamara and Herbert Harney. In 2000, another water line break occurred on the West Parcel, in nearly the same location of the

4

previous 1984 and 1986 breaks—the northeastern corner of the HMI Manufacturing building. As a result of the 2000 water line break and the necessary repairs, the water line was again exposed, showing that it ran from the canyon edge down into Rock Creek Canyon going north.

In 2008, Christy acquired the West Parcel from HNH, LLC. Ten years later, in June 2018, the same water line broke again, in nearly the same location where it had previously broken in 1984, 1986, and 2000. This water break, along with the City's repairs, damaged the HMI Manufacturing building and disrupted HMI Manufacturing's operations. In the course of its repair of the water line, the City moved the portion of the water line that was in the express easement out from under HMI Manufacturing's building.

*2. East Parcel and the Disputed Sewer Line.*

The East Parcel's relevant historical background begins in 1947, when Isaac and Mabel Peterman granted the City an express easement to install and maintain a sewer line under their property. This express easement agreement, known as "Peterman 1," describes Peterman's lands as follows:

*That for and in consideration of the sum of One Dollar ($1.00), and other valuable considerations, paid by grantee to the grantor, receipt whereof is hereby acknowledged, it is mutually understood and agreed as follows:*

*That the grantor is the owner in fee simple of the following described premises:*

A tract of land within the twin Falls townsite bounded as follows:
On the north by the Rock Creek Canyon; On the east by Shoshone Street; On the south by South Park Avenue; On the west by Washington Street. and being described as Tax #294.

*That the grantee desires to construct a sewer trunk line underneath the surface of the above described premises, along the* __north side__ *side thereof, following a course particularly as shown on a master map prepared by and on file in the office of the City Engineer of said city.*

*Figure 2*

While Peterman 1 stated that the sewer trunk line would "follow[] a course particularly as shown on a master map[,]" neither of the parties' surveyors were able to locate a master map before trial.

A sewer line was subsequently installed under what is now the East Parcel, but the record does not contain the date of installation. Sometime in the 1970s, Christy's parents, Gene and Gloria, acquired the East Parcel. In 1978, Gene sought and obtained a permit to construct a warehouse on a portion of the East Parcel, which would become known as the Recycle Center. It appears from the record that the Recycle Center was the first building to be constructed on the East Parcel. The permit contained an express condition requiring Gene to "[m]ove sewer line from under building."

That same year, the City and Gene and Gloria executed an Improvement Agreement for Relocation of the City Sewer System ("Relocation Agreement"). The Relocation Agreement provided that the City would allow Gene and Gloria to relocate a portion of the existing sewer line away from where the Recycle Center would be built in exchange for Gene and Gloria granting the City an easement for the new sewer line's location.

Despite this agreement and subsequent construction of the Recycling Center, the sewer line under the Recycling Center remained in use by the City during these events and remains in use to this day. And no evidence was presented at trial demonstrating that any sewer line, other than the existing sewer line under the Recycle Center, was ever installed or used in this area.

Christy acquired the East Parcel from Gene and Gloria in 2005.

## B. Procedural History

After the water line break in 2018, HMI filed suit against the City, alleging multiple counts of trespass, nuisance, overburdening/overuse of easement, and negligence. Between 2019 and 2023, the parties settled numerous aspects of the dispute that are not relevant to this appeal. In particular, issues involving damage and repair to the subject property were settled, leaving only issues related to HMI's claim for damages caused by specific sewer lines and the water line. In 2024, HMI filed an amended complaint, which included allegations that the City did not have valid easements for all of its sewer lines on the subject property. The City defended against these claims on the basis that it possesses easements, either express or prescriptive, for its water and sewer lines.

In March 2024, the district court held a two-day bench trial on HMI's claims for trespass, nuisance, and damages related to the City's repair of the water line. The court heard testimony from Coy Chapman (HMI's surveyor) and Bert Nowak (the City's surveyor) who both opined on the existence and location of an easement for the sewer trunk line. Pertinent to this appeal, both surveyors agreed that the first portion of the property description in Peterman 1 identified a parcel of land that included the East Parcel and Tax #294. Chapman testified that he did not include the Peterman 1 easement in his survey because he felt the description of the easement was too vague to be depicted. Nowak testified that Peterman 1 referenced two parcels: the "main" parcel defined by the boundary description and a second parcel identified as "Tax #294." Nowak testified that the East Parcel and the parcel described by Tax #294 both fell within the larger, "main" parcel. He further testified that he did not give weight to Peterman 1's reference to Tax #294 and instead

6

focused on the boundary description. With respect to the easement's location, Nowak testified that Peterman 1 created a "blanket easement"[2] that encumbered the entire main parcel.

Following the bench trial, the district court denied HMI's trespass and nuisance claims, concluding that the City established (1) an express easement for the sewer line on the East Parcel, or alternatively, a prescriptive easement, and (2) a prescriptive easement for the water line on the West Parcel. The district court entered a final judgment on December 13, 2024. HMI timely appealed.

## II. ISSUES PRESENTED ON APPEAL

1. Whether the district court erred by concluding that the City held an express easement for the sewer line under the Recycle Center on the East Parcel.

2. Whether the district court erred by concluding that the City held a prescriptive easement for the disputed portion of the water line on the West Parcel.

3. Whether the district court sufficiently described the locations of the express and prescriptive easements.

## III. STANDARDS OF REVIEW

"This Court's review of a trial court's conclusions following a bench trial is limited to determining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law." *Chester v. Wild Idaho Adventures RV Park, LLC*, 171 Idaho 212, 221, 519 P.3d 1152, 1161 (2022) (internal quotation marks omitted) (quoting *Burns Concrete, Inc. v. Teton County*, 168 Idaho 442, 456, 483 P.3d 985, 999 (2020)). "This Court exercises free review over questions of law." *Id.* at 222, 519 P.3d at 1162 (citation omitted).

"We liberally construe 'the trial court's findings of fact in favor of the judgment entered.'" *Id.* at 221, 519 P.3d at 1162 (citing *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009)). "The province of weighing conflicting evidence and testimony, and judging the credibility of witnesses, belongs to the trial court." *Id.* (quoting *Latvala v. Green Enters., Inc.*, 168 Idaho 686, 694, 485 P.3d 1129, 1137 (2021)). This Court "will not set aside the trial court's findings of fact unless they are clearly erroneous, nor will [this] Court 'substitute its view of the facts for that of the trial court.'" *Latvala*, 168 Idaho at 694, 485 P.3d at 1137 (quoting *Borah*, 147 Idaho at 77, 205 P.3d at 1213). "Even in the face of conflicting evidence, clear error will not be found to exist where the findings are supported by substantial and competent evidence." *Id.* at 695, 485 P.3d at 1138

---

[2] Depending on the jurisdiction, "blanket easements" are also referred to as "floating easements," "roving easements," or "global easements." Jon W. Bruce et al., *The Law of Easements & Licenses in Land* § 7:4 (Mar. 2026 update). A floating easement is "[a]n easement that, when created, is not limited to any specific part of the servient estate." *Floating Easement*, Black's Law Dictionary (12th ed. 2024).

(citing *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017)). "Substantial and competent evidence exists if there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal." *Chester*, 171 Idaho at 222, 519 P.3d at 1162 (quoting *Radford v. Van Orden*, 168 Idaho 287, 298, 483 P.3d 344, 355 (2021)).

"The standard of review used by this Court when reviewing a trial court's interpretation of a[n] [instrument] 'depends on whether the instrument is ambiguous.'" *E. Side Highway Dist. v. Delavan*, 167 Idaho 325, 342, 470 P.3d 1134, 1151 (2019) (quoting *Baker v. KAL, LLC*, 163 Idaho 530, 533, 415 P.3d 939, 942 (2018)). "If the [instrument] is unambiguous, the interpretation is a matter of law, which we review *de novo*." *Id.* (citation omitted). "If the [instrument] is ambiguous, the interpretation is a question of fact . . . ." *Id.* (citing *Baker*, 163 Idaho at 533, 415 P.3d at 942).

"A district court's determination that a claimant has or has not established a private prescriptive easement involves entwined questions of law and fact." *Cook v. Van Orden* (*Cook I*), 170 Idaho 46, 51–52, 507 P.3d 119, 124–25 (2022) (quoting *Hughes v. Fisher*, 142 Idaho 474, 479, 129 P.3d 1223, 1228 (2006))."'Whether the facts found, or stipulated to, are sufficient to satisfy the legal requirements for the existence of . . . a prescriptive easement' is a question of law." *Chester*, 171 Idaho at 222, 519 P.3d at 1162 (alteration omitted) (quoting *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009)). "When reviewing the trial court's findings of fact in a case in which the facts must be established by clear and convincing evidence, the job of the reviewing court is simply to determine whether there is substantial and competent evidence to sustain the finding." *Cook v. Van Orden* (*Cook II*), 172 Idaho 869, 875–76, 537 P.3d 1230, 1236–37 (2023) (alteration omitted) (quoting *Latvala*, 168 Idaho at 695, 485 P.3d at 1138).

## IV. ANALYSIS

### A. The district court's conclusion that the City has an express easement for the Sewer Line under the Recycle Center is supported by substantial and competent evidence.

The district court determined that the City established an express easement for the sewer line on the East Parcel. The district court adopted Nowak's position that the description of the servient parcel in Peterman 1 identified two parcels of land: the "main" parcel, which included what is now the East Parcel, and a second parcel identified as "Tax #294" that fell also "within the main parcel." While noting that Peterman 1 stated that the easement's location would follow a course shown on a "master map" that could not be located, the court adopted Nowak's position that Peterman 1 granted a "blanket" easement that authorized the sewer line to be constructed anywhere within the main parcel.

8

On appeal, HMI asserts two challenges to the district court's conclusions. First, HMI argues that the district court erred when it determined that the Peterman 1 easement burdened the East Parcel, rather than the parcel presently described as Tax #294. Second, HMI contends that the district court erred when it concluded that the grantors intended to grant a blanket easement because the easement's location was to follow a specific path purportedly shown on the unavailable master map. Each argument is addressed in turn.

   1. *The district court did not err when it concluded that the East Parcel falls within the description of the burdened property in Peterman 1.*

"An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Cook v. Van Orden* (*Cook II*), 172 Idaho 869, 876, 537 P.3d 1230, 1237 (2023) (quoting *Capstar Radio Operating Co. v. Lawrence* (*Capstar Radio II*), 153 Idaho 411, 420, 283 P.3d 728, 737 (2012)). "A private easement may be created by express agreement, by implication, or by prescription." *Elder v. Nw. Timber Co.*, 101 Idaho 356, 358, 613 P.2d 367, 369 (1980) (citation omitted). "An express easement, being an interest in real property, may only be created by a written instrument." *Capstar Radio Operating Co. v. Lawrence* (*Capstar Radio I*), 143 Idaho 704, 707, 152 P.3d 575, 578 (2007) (citing *Shultz v. Atkins*, 97 Idaho 770, 773, 554 P.2d 948, 951 (1976)). "At a minimum, a valid express easement must identify the land subject to the easement and express the intent of the parties" to establish a servitude. *Baker v. KAL, LLC*, 163 Idaho 530, 534, 415 P.3d 939, 943 (2018) (quoting *Machado v. Ryan*, 153 Idaho 212, 218, 280 P.3d 715, 721 (2012)).

"A contract must be complete, definite and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty." *Hoffman v. Bd. of the Loc. Improvement Dist. No. 1101*, 163 Idaho 464, 469, 415 P.3d 332, 337 (2017) (quoting *Giacobbi Square v. PEK Corp.*, 105 Idaho 346, 348, 670 P.2d 51, 53 (1983)). "An instrument granting an easement is to be construed in connection with the intention of the parties and circumstances in existence at the time the easement was given and carried out." *Millard v. Talburt*, 173 Idaho 533, 542, 544 P.3d 748, 757 (2024) (quoting *Argosy Tr. ex rel. Andrews v. Wininger*, 141 Idaho 570, 572, 114 P.3d 128, 130 (2005)). "That intent is a question of fact, and the trial court's findings on the issue will not be disturbed on appeal if supported by substantial and competent evidence." *Id.* (citation omitted). However, "interpreting intent from an unambiguous instrument is a matter of law, the determination of which we review freely." *McFadden v. Sein*,

9

139 Idaho 921, 923, 88 P.3d 740, 742 (2004) (alterations omitted) (citing *Latham v. Garner*, 105 Idaho 854, 857, 673 P.2d 1048, 1051 (1983)).

Peterman 1 provides the following description of the Petermans' property:

*That for and in consideration of the sum of One Dollar ($1.00), and other valuable considerations, paid by grantee to the grantor, receipt whereof is hereby acknowledged, it is mutually understood and agreed as follows:*

*That the grantor is the owner in fee simple of the following described premises:*

A tract of land within the twin Falls townsite bounded as follows:
On the north by the Rock Creek Canyon; On the east by Shoshone Street; On the south by South Park Avenue; On the west by Washington Street, and being described as Tax #294.

*That the grantee desires to construct a sewer trunk line underneath the surface of the above described premises, along the* north side *side thereof, following a course particularly as shown on a master map prepared by and on file in the office of the City Engineer of said city.*

*Figure 2*

HMI contends that the district court disregarded the plain language of this legal description when it determined that the easement burdened the East Parcel. Because Peterman 1 described a singular "tract of land" and both surveyors agreed that Tax #294 described a location to the south of the East Parcel, HMI argues that Peterman 1 only burdens property immediately south of the East Parcel. In response, the City argues that Peterman 1 sufficiently identified the East Parcel based on its boundaries description and that the reference to the Tax #294 parcel did not nullify the intent of the easement grantors to allow a sewer easement on the larger parcel. We agree with the City.

As discussed above, both surveyors testified at trial that the property description in Peterman 1 identified a parcel of land that included both the East Parcel and a parcel described as Tax #294. The problem with HMI's interpretation is that it elevates the reference to Tax #294 over the boundary description and, consequently, fails to give any effect to boundary description. To be sure, the description of the Petermans' property could have been drafted in clearer terms. However, we do not agree that the inclusion of the reference to Tax #294 nullified the entire boundary description. In our view, the property description was not describing two separate parcels. Rather, the property description set forth the boundaries of a single parcel (which is larger than and included the East Parcel) and then indicated that this parcel was also known as "Tax #294." We note that the words "and being described as Tax #294" are not in the same size font as the boundary description and follow a period after the boundary description. We conclude from this that the phrase was added after the boundary description was typed onto the easement agreement, but it did not serve to change the boundaries of the parcel described therein. Consequently, we conclude

10

that the district court did not err when it determined that the East Parcel was burdened by the Peterman 1 easement agreement.

> 2. *The district court did not err when it concluded that the Peterman 1 easement location was fixed when the sewer line was installed on the East Parcel.*

Peterman 1's stated purpose was for the installation of a sewer trunk line along the north side of the property described and "following a course particularly as shown on a master map prepared by and on file in the office of the City Engineer of said city." When analyzing the quoted provision, the district court noted that neither of the parties' surveyors were able to locate a master map; "[t]herefore, whether an exact location was contemplated by Peterman 1 prior to installation of the sewer line is unknown." Citing *Manning v. Campbell*, 152 Idaho 232, 236, 268 P.3d 1184, 1188 (2012), the court determined that Peterman 1 was a blanket easement, which permitted the City to fix the location of the easement wherever the sewer trunk line was subsequently installed (i.e., on the East Parcel). *See id.* (holding that where an easement is not assigned a location, the parties' construction of the grant of the easement, such as the placement of a canal or driveway, fixed its location "as if such matters had been specifically fixed by formal contract" (quoting *Coulsen v. Aberdeen-Springfield Canal Co.*, 47 Idaho 619, 628-29, 277 P. 542, 545 (1929))).

On appeal, HMI contends the district court misapplied our holding in *Manning* when it determined that the Petermans intended to grant a blanket easement because Peterman 1 specified that the easement's path would follow the course identified on the "master map." And, because this map could not be located, HMI contends that the reference to the master map created a latent ambiguity, which the district court failed to resolve. We disagree with HMI because even assuming the existence of a master map, which contained the contracting parties' agreement regarding the easement's location, the absence of the master map does not create a latent ambiguity in Peterman 1, nor does it change the result in this case.

We begin our analysis by addressing the purported ambiguity in this provision of the Peterman 1 easement agreement. "There are two types of ambiguity, patent and latent." *E. Side Highway Dist. v. Delavan*, 167 Idaho 325, 342, 470 P.3d 1134, 1151 (2019) (citation omitted).

> A patent ambiguity exists when the document is ambiguous on its face. A latent ambiguity exists where an instrument is clear on its face, but loses that clarity when applied to the facts as they exist. This includes an ambiguity that does not appear upon the face of the agreement, but lies hidden in the subject to which it has reference.

*Porcello v. Est. of Porcello*, 167 Idaho 412, 423, 470 P.3d 1221, 1232 (2020) (citation modified). A "latent ambiguity in a contract must ultimately be tied to the language of the instrument itself."

*Id.* at 424, 470 P.3d at 1233. "Latent ambiguities by nature only emerge when the instrument is 'applied to the facts as they exist.'" *Id.* (emphasis omitted) (quoting *Knipe Land Co. v. Robertson*, 151 Idaho 449, 455, 259 P.3d 595, 601 (2011)). "In determining ambiguity, . . . 'the court hears the proffer of the parties and determines if there are objective indicia that, from the parties' linguistic reference point, *the contract's terms are susceptible of different meanings*.'" *Id.* (quoting 11 Williston on Contracts § 30:5 (4th ed.)).

Notably, HMI does not argue that the master map's absence renders the provision susceptible to different meanings. Rather, HMI contends that this provision contains a latent ambiguity only because the provision loses clarity due to the map's absence. This argument misses the mark. Initially, it is unknown whether the master map ever existed. There is no evidence that the parties to the agreement submitted a map to the City nor has this map been located. However, assuming for the sake of argument that (1) the parties had made a collateral agreement concerning the pathway for the sewer trunk line, and (2) the collateral agreement was reflected on the master map, the absence of the map does not suggest that the provision referencing the master map is susceptible of different meanings. Rather, the omission of this collateral agreement would indicate that Peterman 1, by itself, is not a completely integrated contract.

An "integrated agreement" exists when the parties to a contract have reduced to a final written expression "one or more terms of [their] agreement." Restatement (Second) of Contracts § 209(1) (1981). "A completely integrated agreement is an integrated agreement adopted by the parties as a complete and exclusive statement of the terms of the agreement." *Id.* § 210(1). On the other hand, an agreement "is only partially integrated if it is intended as an incomplete expression (though a final expression on certain terms)." *W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666, 673 (7th Cir. 2015) (citations omitted); *see also* Restatement (Second) Contracts § 210(2) ("A partially integrated agreement is an integrated agreement other than a completely integrated agreement."). "Where a written agreement is integrated, questions of the parties' intent regarding the subject matter of the agreement may only be resolved by reference to the agreement's language." *Hoffman*, 163 Idaho at 469, 415 P.3d at 337 (quoting *Steel Farms, Inc. v. Croft & Reed, Inc.*, 154 Idaho 259, 267, 297 P.3d 222, 230 (2012)). However, "[p]arol evidence may be elicited to expand or clarify an incomplete agreement." *Porcello*, 167 Idaho at 425, 470 P.3d at 1234.

In this case, Peterman 1, standing alone, contains the minimum requirements to establish a valid express easement because it adequately "identif[ies] the land subject to the easement and

express[es] the intent of the parties" to establish a servitude. *Baker*, 163 Idaho 530, 534, 415 P.3d 939, 943 (2018) (quoting *Machado v. Ryan*, 153 Idaho 212, 218, 280 P.3d 715, 721 (2012)). However, if we assume that the contracting parties came to a collateral agreement concerning an exact location/pathway of the easement on the Petermans' land, which were reflected on a map, Peterman 1 would not completely integrate the parties' agreement on the sewer trunk line easement because the map is missing. *Nysingh v. Warren*, 94 Idaho 384, 385, 488 P.2d 355, 356 (1971) ("The writings are not complete if the parties reached a collateral agreement on the same subject.").

Even so, this would not help HMI because the district court's findings are sufficient to clarify the allegedly omitted terms. First, the district court found the sewer line was located underneath what is now the Recycle Center on the East Parcel, which fell within the boundaries of property identified in Peterman 1. Second, the district court found that no evidence was "presented at trial that demonstrated that any sewer line, other than the existing sewer line under the Recycle Center, had ever been installed or used in that area." These findings are supported by substantial, competent evidence. During trial, HMI did not establish that an alternative sewer line exists in this boundary description. Notably, HMI's surveyor specifically acknowledged that there is not a sewer line in the Tax #294 parcel. Furthermore, the district court's finding that the sewer line was located under the Recycling Center is corroborated by Nowak's testimony, Nowak's survey, the Relocation Agreement, and the zoning permit obtained by Gene.

Given these findings, we find no error in the district court's reliance on *Manning* regardless of Peterman 1's reference to the master map because the material facts of that case are essentially the same as here. Like the easement agreement in *Manning*, the Peterman 1 easement agreement does not specify the precise location of the easement within an area. Therefore, parol evidence could be elicited to clarify the omitted term, *Porcello*, 167 Idaho at 425, 470 P.3d at 1234, which would necessarily include evidence of the contracting parties' course of performance under the agreement. Here, a sewer line was installed underneath the Recycling Center on the northern side of the East Parcel, which was consistent with the City's stated purpose in Peterman 1 "to construct a sewer trunk line underneath the surface of the . . . described premises, along the north side side [sic] thereof . . . ." HMI did not establish that an alternative sewer line exists in this boundary description, nor did it offer evidence that HMI's predecessors in interest objected to the installation of the sewer line at this location. Thus, as the district court concluded, "the parties' construction of the grant of the easement was determined by the construction of the [sewer line] . . . ." *Manning*, 152 Idaho at 236, 268 P.3d at 1188.

Accordingly, we affirm the district court's ruling that the City has an express easement for the sewer trunk line under the Recycle Center. Because we affirm the district court's express easement ruling, we need not address whether the City established a prescriptive easement for this same sewer line.

**B. The district court's conclusion that the City holds a prescriptive easement for the water line under the West Parcel is supported by substantial and competent evidence.**

Next, HMI argues that the district court erred when it concluded that the City established a prescriptive easement for the disputed portion of the water line on the West Parcel.

> To establish a prescriptive easement, the party claiming the easement must provide clear and convincing evidence that their use of the subject property was (1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement, (5) for the statutory period.

*Cook v. Van Orden* (*Cook II*), 172 Idaho 869, 876, 537 P.3d 1230, 1237 (2023) (citing *Cook v. Van Orden* (*Cook I*), 170 Idaho 46, 52, 507 P.3d 119, 125 (2022)). In Idaho, prescriptive easements are disfavored. *Neeser v. Inland Empire Paper Co.*, 170 Idaho 692, 699, 516 P.3d 562, 569 (2022). "Because prescription acts as a penalty against the burdened landowner, courts should closely scrutinize and limit rights obtained through prescription." *Cook II*, 170 Idaho at 52, 507 P.3d at 125 (citation modified) (quoting *H.F.L.P., LLC v. City of Twin Falls*, 157 Idaho 672, 679, 339 P.3d 557, 564 (2014)).

After examining the City's historic use of the disputed portion of the water line, the district court found that the City established, by clear and convincing evidence, that the City's use of the water line was open and notorious, continuous and uninterrupted, and adverse and under a claim of right since 1978. As a result, the court concluded that the City's water line was not a trespass or nuisance upon the West Parcel because the City had a prescriptive easement.

On appeal, HMI challenges the district court's decision on three bases. First, HMI contends that the City's use of the East Parcel was presumptively permissive because the West Parcel was wild, unimproved, and unenclosed when the water line was initially installed. Given this presumption, HMI argues that the City failed to establish that its use of the West Parcel changed into adverse use. Second, HMI contends the district court failed to state what period of time was under examination for the purpose of its prescriptive easement analysis. Third, HMI contends the district court erred when it determined that the new pipeline fell within the primary prescriptive easement. Each argument is addressed in turn.

*1. Substantial and competent evidence supports the district court's finding that the City's use of the water line was adverse.*

"The question whether a use was adverse, made pursuant to an implied servitude, or permissive, in the inception is often difficult to answer, particularly in cases of long-established uses where the original parties are not available to describe the circumstances of the initial use." *Cook II*, 172 Idaho at 876, 537 P.3d at 1237 (quoting Restatement (Third) of Prop.: Servitudes § 2.16 cmt. g (2000)). "To help determine whether a use was permissive or prescriptive, courts have developed a series of presumptions." *Id.* (citation modified). "In Idaho, the general rule is that proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, without evidence as to how the use began, raises the presumption that the use was adverse and under a claim of right." *Id.* (citation modified) (quoting *Lemhi County v. Moulton*, 163 Idaho 404, 409, 414 P.3d 226, 231 (2018)). "Proof of all of these elements shifts the burden to the owner of the servient estate, who must demonstrate that the claimant's use was permissive." *Id.* (quoting *Marshall v. Blair*, 130 Idaho 675, 680, 946 P.2d 975, 980 (1997)).

The presumption of adverse use, however, "is inapplicable and rather permissive use is presumed if the servient estate is wild, unenclosed, and unimproved." *Id.* (citation modified) (citing *Cook I*, 170 Idaho at 54, 507 P.3d at 127). "If the presumption of permissiveness applied when the use began, the presumption continues until a hostile and adverse use is clearly manifested and 'brought home' to the servient property owner." *Id.* at 876–77, 537 P.3d at 1237–38 (alteration omitted) (quoting *H.F.L.P., LLC*, 157 Idaho at 681, 339 P.3d at 566). "The rule is well established that no use can be considered adverse or ripen into a prescriptive right unless it constitutes an actual invasion of or infringement on the rights of the owner." *Id.* at 879, 537 P.3d at 1240 (citation modified).

"This Court has cautioned against becoming overly focused on discussions of shifting presumptions in prescriptive easement cases." *Id.* (quoting *Cook I*, 170 Idaho at 53, 507 P.3d at 126). Instead, this Court has encouraged trial courts to focus "on whether the five prescriptive easement elements have been satisfied based on the facts before them." *Id.* (quoting *Hughes v. Fisher*, 142 Idaho 474, 481, 129 P.3d 1223, 1230 (2006)). "However, since *Hughes*, this Court has explained: it is not error for the court to use such rules as an approach to determining whether the claimant had met the elements for a prescriptive easement by clear and convincing evidence." *Id.* (citation modified) (quoting *Backman v. Lawrence*, 147 Idaho 390, 399, 210 P.3d 75, 84 (2009)).

"Presumptions may be permitted if each of the five elements for a prescriptive easement are adequately analyzed." *Id*. (citing *Backman*, 147 Idaho at 399, 210 P.3d at 84).

In this case, the district court concluded that, even if the presumption of permissive use applied, the City rebutted the presumption because it "clearly demonstrated that it did 'bring home' its adverse use to Gene Hamilton in 1979 and in 1986." Citing the Twin Falls Planning and Zoning Commission's Meeting Minutes from 1979, the district court found that the City's communication to Gene's agent in 1979 that Gene was not allowed to put fill into the canyon over the City's water line was a direct invasion or infringement of rights over Gene's use of his own property. The district court further found that the two letters City Manager Thomas Courtney wrote to Gene in 1986 forbidding him from placing fill over the water line "was a direct invasion or infringement of rights over Gene's use of his own property."

HMI argues that the district court erred by concluding that an adverse use was clearly manifested to Gene because the letters do not show that the City was engaging in a new and independent act sufficient to put Gene on notice of a change from permissive use to adverse use. HMI contends that the City's permit issuance is merely "an administrative function performed by a governmental entity" and not the sort of decisive action to put one on notice of adverse and exclusive use. HMI further contends that the district court improperly admitted the Planning and Zoning Commission's Meeting Minutes during the trial because the minutes had no relevance.

We first address the admissibility of the Twin Falls Planning and Zoning Commission's Meeting Minutes. As an item of new business, the meeting minutes state:

> Canyon fill for Hamilton Insulation presented by Dave Armstrong - Design Review. Motion by Petersen to approve as covered in Mr. Armstrong's letter with a statement added that the fill will not cover the City water and sewer lines.

During trial, the City stated that they introduced the minutes for the purpose of showing communications that notified Gene, through his agent, of the existence of water lines down in the canyon. HMI argued that the minutes were irrelevant because the contents of Armstrong's letter were unknown. Thus, "we cannot assume what the purpose of this discussion was." In response, the City argued that the communication expressed in the minutes—that Mr. Hamilton was not to cover the water and sewer lines with fill—was relevant on its own. Ultimately, the district court admitted the minutes, finding there was "some" relevance to the document.

HMI maintains on appeal that the "minutes should have been excluded . . . because they were only conditionally relevant, and the conditional facts were never proven." HMI contends that, "without the exact documents being referred to in both the Minutes and the [City Manager's letters

16

to Gene], it is not possible to know what areas were identified in plans submitted for a fill permit, and without that information, the Minutes are not relevant and should have been excluded." We disagree.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." I.R.E. 401. Where relevance depends on the existence of a fact, "proof must be introduced sufficient to support a finding that the fact does exist." I.R.E. 104(b). Here, HMI has not established that the relevancy of the meeting minutes was dependent on Armstrong's letter. Instead, the meeting minutes had "some relevancy" as the district court found because they tend to show the City communicated to Gene—through Armstrong—that Gene was not allowed to cover the water and sewer lines in the canyon with fill. While the Armstrong letter may have clarified the location that Gene was seeking to place fill, the mere possibility that the minutes could be discussing some other water line than the one at issue here goes to the weight of this evidence, not its admissibility. Accordingly, we conclude the district court did not err in admitting the meeting minutes.

Next, substantial and competent evidence supports the district court's finding that the City's adverse use was clearly manifested to Gene. To demonstrate that its use of the water line was adverse and under a claim of right, the City was required to demonstrate that its use "runs contrary to the servient owner's claims to the property." *Latvala v. Green Enters., Inc.*, 168 Idaho 686, 697, 485 P.3d 1129, 1140 (2021) (quoting *Hodgins v. Sales*, 139 Idaho 225, 231, 76 P.3d 969, 975 (2003)). The district court found the City first communicated to Gene that he was not allowed to put fill into the canyon over the City's water line based on the 1979 meeting minutes, which communication evidenced "a direct invasion or infringement of rights over Gene's use of his own property specifically because of the presence of the water line." (Emphasis omitted.)

The district court further found that the City communicated its adverse use in 1986, when City Manager Thomas Courtney stated to Gene twice that he was not allowed to put fill into the canyon, once again due to the presence of the water line. This finding is supported by the two letters Courtney sent to Gene. The first letter, dated January 17, 1986, stated that fill was damaging the water line and informed Gene that the City intended to remove the fill from the easement and leave the line uncovered:

> For the second time in twelve months we have suffered major water main break under the canyon fill on the north of Washington Street. The main in question is in a utility easement and was not designed to be covered. We are of the opinion that the weight of the cover material is causing the line failure. Next week the line will

17

be uncovered and repaired. The repair could cost as much as $5,000. Once the repair is complete it is our intention to remove the fill from the easement and leave the line uncovered. Your cooperation in this matter will be appreciated.

The second letter, dated January 27, 1986, likewise communicated that Gene was not allowed to place fill over the water line:

I have reviewed the records concerning the City's utility easement and your fill permit dated 1980. Plans you submitted for the fill permit clearly show the easement in question. The fill permit clearly states that there is to be no fill activity around City utility lines. The permit also states that the permit holder will be responsible for all damages to utility lines caused by fill activity. In our conversation last week you stated that you have documents granting a right to fill over the easement. Gene, prior to our meeting to discuss this issue, I would appreciate receiving copies of the documents. In the interim, your cooperation in not filling over the easement will be appreciated.

In light of the foregoing, we find no error in the district court's conclusion that the City clearly manifested its adverse use to Gene in 1979 and in 1986. HMI's challenge merely asks this Court to reweigh evidence that was presented below. "This Court does not reweigh evidence, but defers to the trial court's unique ability to accurately weigh the evidence and judge the demeanor of the witnesses and take into account the trial court's 'superior view of the entire situation." *Lunneborg v. My Fun Life*, 163 Idaho 856, 866–67, 421 P.3d 187, 197–98 (2018) (alternations omitted) (quoting *Idaho Dep't of Health & Welfare v. Doe (2017-27)* (*In re Doe Children*), 163 Idaho 367, 376–77, 413 P.3d 767, 776–77 (2018)). The district court did not err when it concluded that the City rebutted the presumption of permissive use.

*2.  The district court clearly stated the prescriptive period under examination.*

HMI contends the district court failed to state what period of time was under examination for the purpose of its prescriptive easement analysis. "To establish a prescriptive easement, a party must show that its use was open and notorious, continuous and uninterrupted, adverse, with the knowledge of the servient estate owner for the requisite statutory period." *Cook I*, 170 Idaho at 52, 507 P.3d at 125. "The statutory period was extended from 5 years to 20 years in 2006." *Id.* (first citing *Capstar Radio Operating Co. v. Lawrence* (*Capstar Radio II*), 153 Idaho 411, 420 n.2, 283 P.3d 728, 737 n.2 (2012); and then citing I.C. § 5-203). "Importantly, however, 'the twenty year time period does not apply to an easement by prescription acquired prior to the amendment.'" *Id.* (citing *Capstar Radio II*, 153 Idaho at 420 n.2, 283 P.3d at 737 n.2). "Knowing the relevant timeframe permits the court to focus only on the relevant facts." *Id.* at 54, 507 P.3d at 127.

18

In this case, the district court clearly indicated that the statutory period started when Gene had actual knowledge of the water line on his property in 1978 in the following portion of its written decision:

> It is beyond question that Gene Hamilton had actual knowledge of the water line on his property from 1978 until he sold it to HNH, LLC in 1999. During this period of time, but no later than 1986, the City "brought home" its adverse claim of Gene's property where the water line is located. Thus, the City's use of the property for this water line was for significantly longer than the five-year prescriptive period. Likewise, the Harneys had actual knowledge of the water line on their property from 2000 until the prescriptive period changed in 2006. Thus, the City's use of the property for this water line was for longer than the five (5) year prescriptive period under the Harney's ownership.

Therefore, the district court did not fail to state which period was under examination for purpose of its prescriptive easement analyses. That it noted alternative distinct starting dates for when Gene had actual knowledge of the water line (in 1978) and when the City brought home its adverse use (in 1979 and 1986), does not diminish the district court's conclusion that a prescriptive easement did, indeed, ripen during the time period of 1978 to 1999.

3. *The district court did not err when it determined that the new pipeline fell within the primary prescriptive easement.*

The district court concluded that HMI failed to carry its burden of demonstrating that the City's placement of new portions of the water line trespassed or created a nuisance on Christy's property. The district court determined that, with respect to the portion of the City's line that was moved, it was moved to a location that was still within the City's express easement. The district court further determined that the other portion was moved "by no more than four inches" and that it fell within the same support structures as the old pipe; therefore, it was not moved far enough to have been taken out of the primary prescriptive easement location:

> [T]he only evidence of instances of the pipe being moved were: (1) the portion of the pipe that was in the City's express easement under the HMI building (which easement was not at issue in this case), and (2) the portion of the pipe that was moved maybe four inches but remained within the underground support structure (the rock "notch") that was necessary for the stabilization of the water line and which was within the primary prescriptive easement.

HMI argues that the deviation in the location of the water line that occurred when the line was repaired should have prevented a finding of a prescriptive easement.

"The scope of a prescriptive easement is fixed by the use made during the prescriptive period." *Beckstead v. Price*, 146 Idaho 57, 64–65, 190 P.3d 876, 883–84 (2008) (citations omitted). Thus, the holder of a prescriptive easement "has no right to change the location of the easement or

increase its width." *Bedke v. Pickett Ranch & Sheep Co.*, 143 Idaho 36, 39, 137 P.3d 423, 426 (2006) (citing *Argosy Trust ex rel. Andrews v. Wininger*, 141 Idaho 570, 114 P.3d 128 (2005)). "An increase in width does more than merely increase the burden upon the servient estate; it has the effect of enveloping additional land." *Id.* at 40, 137 P.3d at 427 (quoting *Aztec Ltd. v. Creekside Inv. Co.*, 100 Idaho 566, 569, 602 P.2d 64, 67 (1979)).

The district court's conclusion that the new pipeline fell within the primary prescriptive easement is supported by competent and substantial evidence. Darin Fairbanks, an on-site foreman that performed much of the repair work after the water line ruptured in 2018, testified in his deposition that, when the original water line was installed, the rock underneath the pipe was carved out or "notched" to provide support for the water line and that the new pipe was still placed in the same support structures as the old pipe:

Q. Okay. And so was the old pipe in the slope removed?

A. Yup.

Q. Okay.

A. We put the new pipe right where the old pipe was.

Q. Okay.

A. For the most part.

Q. And when you say, "for the most part," where were the deviations?

A. Well, if you take that old pipeline that was in that hillside, those old boys -- you can see this is all solid rock -- they had chipped a notch in that canyon rim. And that old pipeline was set in that notch and they had rebars up over top of that pipeline and anchored that old pipeline to the hillside. So for me to take the old pipeline out, it's pretty stupid not to put the new pipeline where the old pipeline was.

Q. Sure. And my question was you said "for the most part." Was there any significant deviation from the old pipe --

A. Let's talk this much (indicating).

Q. When you say, "this much" you're saying --

A. Four inches.

HMI contends that the district court mischaracterized Fairbanks' testimony because Fairbanks was describing an initial attempt to place the water line in the notch system before that attempt was abandoned in favor of the large thrust block that was subsequently installed. Therefore, HMI contends that Fairbanks' testimony does not support the finding that the final water line uses the same supporting structure as the original line.

However, nothing in Fairbanks' testimony indicates that the location of the water line changed when the thrust block was installed. And while HMI directs this Court to conflicting evidence regarding the ultimate location of the water line, "[i]t is the province of the district court—and not this Court—'to weigh conflicting evidence and testimony and to judge the credibility of the witnesses.'" *City of Meridian v. Petra Inc.*, 154 Idaho 425, 452, 299 P.3d 232, 259 (2013) (quoting *Beckstead*, 146 Idaho at 61, 190 P.3d at 880). "Thus, even if the evidence is conflicting, if the findings of fact are supported by substantial and competent evidence this Court will not disturb those findings on appeal." *Or. Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co. of Idaho*, 148 Idaho 47, 50, 218 P.3d 391, 394 (2009) (citation omitted). HMI is asking this Court to reweigh evidence that was presented to the district court, which we will not do. Accordingly, the district court did not err when it determined the location of the repaired water line did not exceed the boundaries of the easement.

For these reasons, we affirm the district court's ruling that the City possesses a prescriptive easement for the waterline on the West Parcel.

### C. The district court did not err by omitting descriptions of the express and prescriptive easement's locations in the judgment.

HMI argues that the district court failed to provide adequate descriptions of the express and prescriptive easements' location because the district court did not include the physical parameters of the easement in its judgment. "It is well settled under Idaho law that any judgment determining the existence of an easement must also specify the character, width, length and location of the easement. This Court does not hesitate to remand cases because of an inadequacy in the district court's description of an easement." *Beckstead*, 146 Idaho at 66, 190 P.3d at 885 (citation modified) (quoting *Schneider v. Howe*, 142 Idaho 767, 774, 133 P.3d 1232, 1239 (2006)).

In this case, however, the judgment did not determine the existence of an easement. Instead, the judgment addressed, among other things, HMI's causes of action against the City for trespass and nuisance regarding the City's use of the water line on the West Parcel and sewer line on the East Parcel. As the district court noted, the City did not countersue HMI and did not seek a judgment establishing the easement. Therefore, the district court was not required to include the parameters of these easements in its judgment. Accordingly, we conclude that the district court did not err by omitting a description of these easements in the judgment.

21

## V. CONCLUSION

For these reasons, we affirm the judgment of the district court. The City is awarded costs on appeal as a matter of course pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, and Justices BRODY, MOELLER, and ZAHN CONCUR.